**IN THE COURT OF APPEALS OF IOWA**

No. 13-1976
Filed March 25, 2015

**IN RE THE MARRIAGE OF CHRISTY GOODVIN
AND MATHEW GOODVIN**

**Upon the Petition of
CHRISTY BRENDEN f/k/a CHRISTY
GOODVIN,**
    Petitioner-Appellee,

**And Concerning
MATHEW GOODVIN,**
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Duane E.

Hoffmeyer, Judge.


The husband in a dissolution action appeals several economic aspects of

the decree. **AFFIRMED AND REMANDED.**


Martha M. McMinn, Sioux City, for appellant.

R. Scott Rhinehart of Rhinehart Law, P.C., Sioux City, for appellee.


Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

Mathew Goodvin appeals from the decree dissolving his marriage to Christy Goodvin, now Christy Brenden. He claims the district court erred in calculating the value of his family's farm corporation and in determining his percentage of ownership. Matthew also challenges the order concerning postsecondary education expenses. Because we find the court acted prematurely in ordering subsidies under Iowa Code section 598.21F, we remand for the court to amend that provision of the decree. On all other grounds, we affirm.

## I.     Background fact and proceedings

Mathew and Christy started living together in September 2002 and married in January 2006. They have one child together, J.G., who was born in 2005.[1] The couple separated in 2012, and Christy filed a petition for dissolution on September 10, 2012.

Christy is thirty-seven years old, in good health, and works as a restorative aide, assisting nursing home residents with physical therapy. She is also a certified nursing aide. Christy had no wages in 2012, but currently earns $11.40 an hour. She took some community college classes toward her nursing degree, but was unable to finish due to other demands on her time.

Mathew is thirty-five years old, in good health, and is employed by a business called Wilson Trailer. Mathew also works for his family's farm corporation—Goodvin Farms, Inc. Mathew earned $47,100 in 2012.

---

[1] J.G.'s twin died from sudden infant death syndrome in 2005. Christy also has a twelve-year-old daughter.

Goodvin Farms does not own any land, but grows crops on nearly 1200 acres. Roughly 900 acres of that property is owned by Mathew's parents, Virgil and Jackie. The corporation also operates two hog barns, one for feeder pigs and one farrow to finish. Mathew and Christy both lived and worked on the farm while they were married. They lived on the homestead rent free, with their electric bill paid by the corporation. They also received vehicle payments, fuel, and car insurance from the corporation. Mathew and Christy received cash from the corporation when they requested it, but they did not receive a salary or regular distribution payments.

At trial, Mathew testified he believed Goodvin Farms had no value. In contrast, certified public accountant Craig Merry, who testified for Christy, placed the net equity of the corporation at $838,000. Merry also testified to a possible alternative value depending on a reduction of $209,000 for a crop insurance payment that may have already been received.

In the dissolution decree, the district court found CPA Merry to be more credible than Mathew and assigned the farm corporation a net value of $461,875. The district court also found Mathew held a 49 percent interest in the family corporation, which left him with $226,318 of its overall value. After reviewing and valuing all the martial assets, the district court ordered Mathew to pay Christy an equalization payment of $93,325.38.

The court granted joint custody of J.G. to Mathew and Christy and placed physical care with Christy. The court directed Mathew to pay $611 a month in

child support and to be responsible for carrying health insurance for J.G.[2]  The court also held Christy and Mathew each responsible for one-third of the postsecondary educational expenses that would be incurred by J.G. between the ages of eighteen and twenty-two.  The court did not award alimony.  Mathew now appeals.

## II.    Standard of Review

We review dissolution of marriage decrees de novo.  *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).  We will disturb the property distribution determination only when the district court has failed to achieve equity.  *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005).

We give weight to the district court's factual findings, but are not bound by them.  Iowa R. App. P. 6.904(3)(g).  We are especially deferential when it comes to credibility calls because, unlike appellate courts that must rely on the printed record, the trial court has the opportunity to listen and watch the witnesses and gain information that can only be obtained by seeing them.  *See In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984).

## III.    Analysis of Mathew's claims of error

Mathew contests the district court's valuation of the farm corporation and its determination of his ownership share.  He also contends the court prematurely assigned postsecondary education responsibilities.  We will address each assignment of error in turn.

---

[2] Mathew originally challenged this aspect of the decree on appeal, but withdrew that issue because he found reasonably priced health insurance.

### A.    Value and Percentage of Ownership of Goodvin Farms

Before dividing marital property, the dissolution court must identify all assets held in the name of either or both parties.  *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007).  "The purpose of determining the value is to assist the court in making equitable property awards and allowances."  *In re Marriage of Moffatt*, 279 N.W.2d 15, 19 (Iowa 1979).

Mathew argues the court improperly valued Goodvin Farms.  He disputes the court's finding the corporation owned the farm implements.  Mathew contends his father, Virgil, owned the machinery and the corporation simply paid the cost of its insurance.  The district court did not believe the testimony of Virgil and Mathew on this point.[3]  The court placed greater stock in the calculations of CPA Merry, who testified for Christy.  We defer to the district court when its valuations are accompanied by supporting credibility findings.  *See In re Marriage of Decker*, 666 N.W.2d 175, 180–81 (Iowa Ct. App. 2003).

Mathew also contends the court incorrectly found he owned 49 percent of the farm corporation.  Mathew claims he has only a 40 percent share.  He disavows the 2008 tax return filed on behalf of Goodvin Farms, which shows his 49 percent ownership.  He denies signing the document and points out his name is spelled incorrectly.

---

[3] When discussing the value of the farm and Mathew's ownership the district court said "Mathew was not forthright in providing financial information to value the family farm corporation and ultimately through his own witness it was disclosed the most recent tax returns provided were not the tax returns filed.  The court finds any explanations offered to not be credible."  The court also stated: "there is no doubt Mathew and his family have been less than forthright" and "did not produce timely and accurate information."

We again defer to the district court's credibility determination and reject Mathew's contention he owned only 40 percent of the family farm corporation. The value the district court placed on Mathew's assets fell within the permissible range of evidence. *See In re Marriage of Versluis*, 521 N.W.2d 760, 761 (Iowa Ct. App. 1994). We decline to disturb the property distribution.[4]

### B. Postsecondary Education Subsidies

Mathew next argues given that J.G. is only eight years old, it is too speculative for the district court to reach conclusions about his postsecondary education prospects.

A district court may order a postsecondary education subsidy if the record reveals good cause. Iowa Code § 598.21F(1). Good cause is determined by considering the following criteria: the age of the child, the ability of the child relative to postsecondary education, the child's financial resources, whether the child is self-sustaining, and the financial condition of each parent. *Id.* § 598.21F(2).

The district court did not properly make a threshold finding of good cause for ordering subsidies. Because J.G. is a decade away from college, it is too difficult to predict his academic potential, his financial resources or the financial conditions of the parents at that point in time. *See In re Marriage of Murphy*, 592 N.W.2d 681, 684 (Iowa 1999); *In re Marriage of Mayfield*, 477 N.W.2d 859, 862 (Iowa Ct. App. 1991). Therefore, we remand the case to the district court to

---

[4] We also note Mathew significantly benefited by the court not including any value for the growing crops. *See In re Marriage of Martin*, 436 N.W.2d 374, 376 (Iowa Ct. App. 1988) (approving consideration of value of growing crops as marital asset subject to property distribution).

enter an amended decree reserving jurisdiction to consider an application for postsecondary education expenses when the requisite findings can be made.

**IV.    Appellate attorney fees**

Finally, Christy asks for appellate attorney fees in the amount of $6660.82. An award of attorney fees is at our discretion.  *In re Marriage Okland*, 699 N.W.2d 260, 270 (Iowa 2005).  In deciding whether to award attorney fees, we consider the financial needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.  *Id.*  Given the relative earning capacity of the parties and Christy's success in defending the decree in its major aspects, we award Christy $4000 in attorney fees.

**AFFIRMED AND REMANDED.**