Sharon A. Mellon of Mellon & Spies, Iowa City, for petitioner-appellant.

Philip A. Leff of Leff, Leff, Leff, Haupert & Traw, Iowa City, for respondent-appellee.

Considered by DONIELSON, P.J., SCHLEGEL, and HAYDEN, JJ.

**In re MARRIAGE OF Steven Wirth JENSEN and Mary Louise Jensen.**

**Upon the Petition of Steven Wirth Jensen, Petitioner-Appellant,**

**And Concerning Mary Louise Jensen, Respondent-Appellee.**

No. 85–1633.

Court of Appeals of Iowa.

Sept. 25, 1986.

SCHLEGEL, Judge.

Petitioner Steven Jensen appeals the trial court's award of alimony to Mary Jensen pursuant to Iowa Code section 598.21(3) (1985). He also contends that the trial court erred in reserving jurisdiction to make future orders with respect to the support of the parties' son. We affirm and modify the alimony award.

Steven and Mary were married in 1962. In November, 1984, Steven filed a petition for dissolution of the marriage. Steven is employed at Proctor & Gamble and has a gross income of approximately $2,500 per month, $1,700 net. He has worked in this job for almost twenty years. Steven is forty-three years old, has a high school

education, and in good health. Mary is employed by the West Branch School Board and the West Branch School Superintendent. She has a gross income of approximately $1,600 per month, net $975. She worked outside of the home for all but nine years of the marriage. Mary is forty-three years old, has a high school education, and is in good health. Steven and Mary have two children, a son in college and a daughter in high school.

The parties' pretrial stipulation resolved all issues by agreement with certain exceptions. The trial court adopted this stipulation but also ordered Steven to pay $25 per week until Mary reaches the age of sixty-five or until she remarries or until the death of either party. The trial court also retained jurisdiction to make future orders with respect to the support of the parties' son if the parties failed to agree as to their respective obligations. Steven appeals these portions of the decree. Steven does not appeal the court's order to pay $60 per week in child support for the minor daughter.

Our review of a dissolution involving property division, child support, and alimony is de novo. Iowa R.App.P. 4; *In re Marriage of Behn*, 385 N.W.2d 540, 541 (Iowa 1986). We give weight to the trial court's finding of fact, but we are not bound by them. Iowa R.App.P. 14(f)(7); *In re Marriage of Orgren*, 375 N.W.2d 710, 712 (Iowa Ct.App.1985).

■ There is no mechanical rule which dictates equal division of marital assets and liabilities. *In re Marriage of Stewart*, 356 N.W.2d 611, 612 (Iowa Ct.App.1984). Rather, the ultimate question is whether distribution is equitable under specified facts of a particular case. *In re Marriage of Yates*, 365 N.W.2d 49, 51 (Iowa Ct.App. 1985). All economic aspects of the decree must be viewed as an integrated whole. *In re Marriage of Bornstein*, 359 N.W.2d 500, 503 (Iowa Ct.App.1984).

■ Iowa Code section 598.21(3) (1985) provides:

Upon every judgment of annulment, dissolution or separate maintenance, the court may grant an order requiring support payments to either party for a limited or indefinite length of time after considering all of the following:

a. The length of the marriage.

b. The age and physical and emotional health of the parties.

c. The distribution of property made pursuant to subsection 1.

d. The educational level of each party at the time of marriage and at the time the action is commenced.

e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

g. The tax consequences to each party.

h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

i. The provisions of an antenuptial agreement.

j. Other factors the court may determine to be relevant in an individual case.

The trial court determined that after taking into consideration all of the matters set forth in this section, the wife was disadvantaged primarily in terms of providing for her retirement. Since their agreement evidenced that the parties desired they should come out of the dissolution as equally as possible, the court found that Mary should be able to provide for a retirement equal to Steven's retirement. The parties had stipulated that Steven would transfer $20,000 of

his $58,000 retirement plan to Mary's existing plan worth $18,000. That way both parties were provided with a retirement fund of $38,000. The court found that such an arrangement did not adequately account for factors such as Steven's not being required to contribute to his retirement plan and Mary's having to put $250 per month into a tax-sheltered annuity. To compensate for this inequality, the court awarded the sum of $25 per week alimony to Mary until she remarries, reaches the age of sixty-five, or either party dies. Steven argues that the trial court erred in awarding this alimony. We do not agree with Steven's contention but we do believe a lump sum payment is a more appropriate way to balance the retirement plans.

Iowa courts have consistently determined that pensions and other retirement plans can be considered in framing the financial clauses of dissolution decrees. *In re Marriage of Yates*, 365 N.W.2d 49, 51 (Iowa Ct.App.1985). Pension funds are rights derived from an employment contract and are a form of property. *In re Marriage of Bevers*, 326 N.W.2d 896, 900 (Iowa 1982). In *In re Marriage of Schissel*, 292 N.W.2d 421, 427 (Iowa 1980), the Supreme Court of Iowa found that even though the time for the retirement pay had not yet arrived, the trial court could take future retirement pay into consideration in adjusting the parties' equities. The supreme court agreed that the best way to adjust the equities would be through a lump sum allowance. The supreme court agreed with the trial court that it would not be in the best interest of either party to ties their futures together beyond their duty in assisting their children to gain a higher education. *Id.*

We have looked at comparative retirement benefits in holding that such benefits should be equalized as much as possible. *In re Marriage of Schissel*, 292 N.W.2d at 427. Other states have agreed that the value of a spouse's vested pension plan may be considered for the purpose of equitable distribution. In *Summers v. Summers*, 491 So.2d 1270 (Fla.Dist.Ct.App. 1986), a Florida court found that because of

disparity between the values of the pension plans, it was proper, in making an equitable distribution, to order one spouse to make a lump sum alimony payment to the other spouse. The court found that it was permissible to consider the present value of the pension plan, as long as it was vested, in determining the lump sum payment. *Id.* It is apparent from the record in the present case that both spouses were concerned with providing for their retirement. Both spouses were concerned with the future financial impact on them of providing a higher education for their children. We must conclude, as did the trial court, that both spouses had the same retirement goals and expectancies regarding pension benefits. These expectations are no different than if they had provided for their late years by using wage income to purchase other investments.

We believe that lump sum payments of retirement supplements better serve our purpose in equalizing spousal expectancies. No future litigation is necessary in order to secure periodic payments and the future financial circumstances and life expectancy of the payer cannot depreciate the award. *See, e.g., Crowe v. DeGioia*, 203 N.J.Super. 22, 495 A.2d 889 (1985).

We give considerable weight to the trial court's findings upon its consideration of equalization of those retirement programs and we conclude that the division of liabilities should not be altered. *See In re Marriage of Behn*, 385 N.W.2d 540 at 544 (Iowa 1986). We also find that Steven's financial resources at present do not easily permit him to make future regular payments to Mary. We therefore conclude that Steven should transfer a lump sum $5,000 from his retirement account at Proctor & Gamble to Mary's retirement account in addition to the $20,000 already transferred. This amount is the approximate result of discounting, to present value, based on Treasury Investment Growth Receipts, the periodic payments ordered by the trial court. After this payment, Steven will pay no further alimony to Mary. We believe this result best achieves the equitable divi-

sion of the property and furthers the goals of limiting further litigation, not tying the futures of the parties together, and not permitting the life expectancy of the payer to devaluate the award.

Steven also contends that the trial court erred in retaining jurisdiction to decide disputes between the parties as to support for the son in the event they cannot agree themselves. We find no merit in this argument. We agree with Mary that the clear intent of this order was to implement provisions of the stipulation between the parties. If the son's financial needs substantially exceed those provided for in the stipulation, either party remains entitled to petition the court to modify the dissolution decree.

Petitioner-appellant is responsible for the costs of this appeal.

AFFIRMED AS MODIFIED.