In re the **MARRIAGE OF Gary C. WHITE and B. Joan White,**

Upon the Petition of Gary C. White, Appellee,

And Concerning B. Joan White, Appellant.

No. 94–502.

Supreme Court of Iowa.

Sept. 20, 1995.

B. Joan White, Ames, pro se.

C.A. Pasley of Singer, Pasley, Holm, Timmons, Mathison & Curtis, Ames, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

CARTER, Justice.

Respondent, B. Joan White, appeals and petitioner, Gary C. White, cross-appeals from various economic provisions of the decree dissolving their marriage. Respondent (Joan) challenges the trial court's failure to divide future royalties that petitioner will receive from textbooks published during the marriage. She also challenges the method the court employed in setting off property inherited by the parties, its failure to value and divide petitioner's early retirement package, and its failure to award her alimony. Petitioner (Gary) urges on cross-appeal that the trial court should not have awarded Joan one-half of a $35,000 royalty check, which he received for a published textbook the day before the trial commenced.

Gary and Joan were married in 1960. At the time of the marriage, Gary had completed his bachelor's degree at the University of Kansas, while Joan had completed one year at that university. She thereafter completed her second year of college but then dropped out to financially assist Gary in completing a second bachelor's degree, a master's degree, and a Ph.D. degree. When Gary obtained a teaching position in the music department at Iowa State University, Joan resumed her college education at that institution. Her studies were again interrupted, however, by the birth of the parties' two children in 1969 and 1970.

Joan eventually obtained her bachelor's degree from Iowa State University in 1977 and, in 1980, obtained a juris doctor degree from Drake University Law School. In 1980, she commenced the practice of law in Ames and has continued that practice until the present time. Her annual net income from that practice for the years 1989–92 was $27,253, $25,429, $17,939, and $23,264, respectively.

Gary has distinguished himself as a professor at Iowa State University. In addition to teaching, he has also composed music and published several textbooks for college music students. Gary has a contract to coauthor three subsequent editions of these textbooks and a royalty agreement for textbooks that have already been published. Gary began receiving royalties from published books in 1988. Gary's annual teaching salary for the years 1989–92 was $49,085, $49,558, $49,272, and $50,784, respectively.

The amount of textbook royalties received by Gary from 1991–93 was $26,245, $27,330, and $30,250, respectively. On the day before the trial commenced, he received an addition-

al royalty check for $35,000. In dividing the property of the parties, the district court awarded Joan one-half of that sum but declined to award her a percentage of Gary's future royalties on books published during the marriage. In 1994, Gary took early retirement from his professorship. His annual salary at that time was $65,600.

Joan contended that the value of marital assets to be divided was approximately $1,000,000, while Gary valued these assets at $748,900. This discrepancy is not as great as it appears, however, as Joan included inheritance expectancies of Gary in the assets to be divided. These assets, we believe, would be set aside to Gary in any event and would not affect the equitable distribution of marital property. The district court, in most particulars, accepted Gary's asset valuations and divided assets that it found to approximate $750,000 in value.

The assets that the court divided included Gary's retirement accumulation in his TIAA/CREF fund valued at $460,700. The court's division of assets other than the TIAA/CREF favored Joan. It attempted to equalize the property division by assigning fifty-five percent of the TIAA/CREF accumulation to Gary and forty-five percent to Joan. The district court did not value or divide the contract right representing Gary's future royalties from textbooks published during the marriage. Nor did it determine and divide the value of Joan's law practice. The court took the position that these two values balanced each other in the overall equation for an equal property division.

On appeal, the parties do not challenge the valuation or division of any of the assets other than the specific claims that we have outlined. We therefore decide the case in the manner in which it has been presented to this court.

■ Pursuant to Iowa Rule of Appellate Procedure 4, our review is de novo. This court is required to examine the record in its entirety and adjudicate the rights and issues presented by the parties based on that record. *In re Marriage of Weinberger,* 507 N.W.2d 733, 735 (Iowa App.1993). We give weight to the trial court's findings but are not bound by them. *In re Marriage of Geil,*

509 N.W.2d 738, 740 (Iowa 1993). Precedent is of little value as our determination must depend on the facts of the particular case. *In re Marriage of Sparks,* 323 N.W.2d 264, 265 (Iowa App.1982).

### I. Joan's Appeal.

■ A. *Whether inherited property must be divided in kind and valued at the time of trial.* Joan argues that in the process of setting off inherited assets a court should make that division in kind with the assets valued at the time of trial. Using this premise, she suggests that the trial court improperly set off inherited property based on that property's value when received. Joan's argument has some merit, we believe, in situations in which the inherited property does not change in form following its receipt. Where, however, the inheritance is in the form of cash and it is used to buy property during the marriage, the proposition she seeks to advance loses much of its force.

In the present case, the inheritances of both parties were in the form of cash and were invested by them in assets, some of which appreciated in value. Decisions on how to use property during the marriage, including inherited property, bear most of the characteristics of a family decision. Barring special circumstances not present here, we believe that the resulting appreciation or loss may be characterized as marital property. We do not disturb the district court's adjustment of assets based on inherited property. Indeed, it is possible to argue that Joan was treated more favorably in this regard than she should have been. In calculating the amount of inherited assets set off to her, the district court included inherited funds that had been entirely consumed during the period of the marriage.

■ B. *Division of royalties on textbooks published during the marriage.* On the issue of future textbook royalties, we disagree with the district court's determination that the value of those contract rights approximate the value of Joan's law practice. Both parties agreed at trial that the value of Joan's law practice and accounts receivable was only $24,000. Obviously, the present

value of Gary's future royalties exceeds that sum. A court may deal with assets for which no present value can be determined by a decree that divides the funds when received. This approach was approved by the court of appeals in *In re Marriage of Oler*, 451 N.W.2d 9, 12 (Iowa App.1989), and *In re Marriage of Curfman*, 446 N.W.2d 88, 90 (Iowa App.1989).

Gary has contended that gross royalties received by him in the future are conditioned on his performance of promotional services after the termination of the marriage. In addition, this royalty income is an unlikely subject for a qualified domestic support agreement and thus will be taxable to Gary. Our consideration of these two factors causes us to fix Joan's percentage of the future royalties from published texts at thirty percent rather than fifty percent.

We also believe that, as a result of our determination concerning the royalty income, fairness requires that the agreed value of Joan's law practice and accounts receivable be equitably divided between the parties. The value of Joan's law practice is $8000. Her accounts receivable are valued at $16,-000. Because the accounts receivable, when collected, will generate an income tax liability for Joan and not Gary, we fix his share of these accounts at $5500. We divide the law practice value equally. This fixes Gary's share of these two assets at $9500.

With respect to Gary's royalties from William C. Brown Company Publications, this proportion for sharing royalties shall apply to the fifth and prior editions. Any royalties received by Gary from a sixth edition shall be divided eighty percent to Gary and twenty percent to Joan.

C. *Proposed division of early retirement benefits.* We reject Joan's claim that the court should have valued and divided Gary's early retirement benefit package from Iowa State University. Almost all of the benefits received were nonassignable insurance benefits personal to Gary and of no cash value. Additional TIAA/CREF benefits included in the early retirement package were included by the court in the total TIAA/CREF benefits that were divided in the decree.

■ D. *Alimony.* As a final matter, we consider Joan's argument that she was entitled to alimony. She urges persuasively that her income has always been substantially less than Gary's even after completing her law degree. She argues that property settlements and spousal support serve different purposes, and she should not be forced to consume her property settlement to meet present living expenses.

While we are not totally unsympathetic to Joan's plea, we believe that her argument based on comparative income levels loses much force as a result of Gary's retirement. The amount he will be able to earn from writing and publishing is quite speculative. The amount that has been established for his retirement through contributions while he was working has been divided equitably between the parties, thus giving Joan a source of support from Gary's TIAA/CREF accumulations. We conclude that the district court's refusal to award alimony should not be disturbed.

## II. *Gary's Appeal.*

■ On Joan's appeal, we provided for less than an equal division of Gary's royalties because of two factors: postdecree activities required of Gary to secure the royalties, and Gary's potential tax liability for these payments. Only the second of these factors applies to the $35,000 royalty received by Gary on the eve of trial. Giving consideration to this factor, we modify the district court's decree by fixing Joan's share of this royalty at $12,500 rather than $17,500.

## III. *Conclusion.*

To summarize our modification of the trial court's property division, Joan's share of the royalty check received by Gary on the eve of trial shall be $12,500. Gary's liability to Joan for that sum should be reduced by the $9500 that represents his share of the parties' agreed valuation of Joan's law practice and accounts receivable. The district court's decree is modified so as to reflect these adjustments. It is also modified to reflect our resolution of royalties paid to Gary. As so modified, that decree is affirmed.

AFFIRMED AS MODIFIED ON BOTH APPEALS.