**IN THE COURT OF APPEALS OF IOWA**

No. 13-1494
Filed August 13, 2014

**IN RE THE MARRIAGE OF KATHERINE J. McGUIRE-LITTLE
AND KEITH R. LITTLE**

**Upon the Petition of
KATHERINE J. McGUIRE-LITTLE,**
        Petitioner-Appellee,

**And Concerning
KEITH R. LITTLE,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Monroe County, Joel D. Yates,

Judge.

        Keith Little appeals the economic provisions of the dissolution decree.

**AFFIRMED.**

        Bryan J. Goldsmith of Gaumer, Emanuel, Carpenter & Goldsmith, P.C.,

Ottumwa, for appellant.

        Cynthia D. Hucks of Box & Box Attorneys at Law, Ottumwa, for appellee.

        Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**DANILSON, C.J.**

Keith Little appeals the economic provisions of the dissolution decree. Specifically, he appeals the district court's award to him of $19,425.59 out of the proceeds from the sale of the marital home. He contends it was inequitable for the court to not return the parties to their pre-marital state of equity and divide the excess proceeds from the sale of the marital home. Because we find the district court's distribution equitable, we affirm.

## I. Background Facts and Proceedings.

Keith Little and Katherine McGuire-Little were married on August 9, 2009, and the dissolution decree was filed on September 16, 2013. Both were previously married. Both are in their fifties and employed. The parties have no children together.

The parties divided most of their property by stipulation: The parties stipulated and agreed that each party would keep their own vehicle and the debt thereon and that the same was "a fair and equitable division of assets." The parties agreed they will each keep their respective retirement accounts without any offset.[1] The parties stipulated that Katherine would be awarded the entirety of her Edward Jones retirement account (funded by the property settlement from a previous marriage) and no money from that account would be transferred to Keith. The parties agreed that each party would pay their own respective student loans, again agreeing this was "a fair and equitable division of the assets." These stipulations were adopted by the district court.

---

[1] Keith acknowledged he has "a significantly larger [retirement] IPERS account with which to rely on later in life" than Katherine.

The only real bone of contention[2] was the division of the proceeds from the sale of a house they had purchased during the marriage. The $60,000 down payment was supplied from Katherine's premarital account, which was funded by her property settlement from her first marriage. Improvements on the house were made using about $20,000 traceable to the sale of property Keith owned prior to his marriage to Katherine.

The district court, ruling from the bench, divided the net proceeds from the sale of this property—$49,951.50 to Katherine and $19,425.59 to Keith.

Keith appeals.

## II. Standard of Review.

We review equity proceedings de novo. *In re Marriage of Olson,* 705 N.W.2d 312, 313 (Iowa 2005). We give weight to the district court's findings, especially regarding the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g). "Precedent is of little value as our determination must

---

[2] The district court did note, however:

> One week prior to the commencement of this dissolution proceeding, [Keith] the Respondent inappropriately and without the knowledge or permission of [Katherine] the Petitioner removed $14,800 from a joint checking account into his own account which he had sole access to and has used that for the benefit of himself.
>
> Not to be outdone, the Petitioner without the knowledge, permission, consent of the Respondent, while the Respondent was in the state of Mississippi, took a moving van to the parties' home and removed most, if not all, of the joint furniture owned by the parties.

The court ruled:

> Regarding the check for $14,800 and regarding the furniture, Petitioner is awarded one-half the value of that check written seven days before these proceedings started; which equals $7,400. The Respondent is awarded a like amount offset furnishings that were taken from the house and so *that is a wash*.

(Emphasis added.)

depend on the facts of the particular case." *In re Marriage of White,* 537 N.W.2d 744, 746 (Iowa 1995).

**III. Discussion.**

On appeal, Keith contends the district court's decision to award him $19,425.59 of the sale proceeds from the Hickory property was inequitable. He asks that we amend the decree to "return the parties back to their pre-marital state of equity and divide the excess."

In dividing the proceeds, the trial court ruled:

> [I]t is almost always the case in these types of cases, it is not possible to reset the clock to August 8th of 2009 (day before marriage) and put the parties back to where they would like to be, but the Court is going to do the best it can under the circumstances with the limited amount of resources available and what the Court deems to be fair and equitable based on what I have heard here today . . . . While it does not return the parties to where they were prior to the marriage, and while it does not satisfy either party in terms of the desire to what they were asking, again, the Court deems that it to be fair and equitable under the circumstances and that it is what the Court will order regarding the distribution of the proceeds.

We agree.

In the dissolution decree, the district court is to divide the property of the parties equitably. Iowa Code § 598.21(5) (2013) (listing factors the court is to consider when dividing the assets and debts of the parties). What is equitable depends upon the unique circumstances of each case. *In re Marriage of Callenius*, 309 N.W.2d 510, 515 (Iowa 1981). Though equality is most often equitable, it is not required. *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007).

As noted by the district court, this was an "extremely short-term marriage." We acknowledge Keith's arguments, but upon our de novo review of the evidence, conclude Keith's arguments tend to ignore or minimize the value of the property he received and overemphasize Katherine's. His contention that Katherine unduly benefits because her Edward Jones fund rebounded to about the level it was prior to the marriage is not persuasive. The increased value of the fund was due to market factors, not to any action or inaction of the parties. And had the $60,000 not been used for the down payment of the house, the Edward Jones fund would be even greater—and the parties would not have been able to purchase the house. Considering all the pertinent factors and the circumstances here, we find the trial court's property allocation equitable. We affirm.

## IV. Appellate Attorney Fees.

Katherine requests an award of appellate attorney fees in the amount of $3500. Appellate attorney fees are not a matter of right, but rest in the court's discretion. *In re Marriage of Oakland*, 699 N.W.2d 260, 270 (Iowa 2005). We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). We award Katherine $ 1500 in appellate attorney fees.

Costs are taxed to Keith.

**AFFIRMED.**